1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

SCHYLAR F. WEST,

7                                    Plaintiff,

8         v.

9   MICHAEL J. ASTRUE, Commissioner of
    Social Security,

10
                                     Defendant.
11

Case No. 3:09-cv-05741-BHS-KLS

REPORT AND RECOMMENDATION

Noted for December 24, 2010

12
13          Plaintiff has brought this matter for judicial review of defendant's denial of his

14   application for supplemental security income ("SSI") benefits.  This matter has been referred to

15   the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

16   4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

17   After reviewing the parties' briefs and the remaining record, the undersigned submits for the

18   Court's review the following Report and Recommendation, recommending that for the reasons

19   
20   set forth below this matter be remanded to defendant for further administrative proceedings.

21                          FACTUAL AND PROCEDURAL HISTORY

22          Plaintiff currently is 30 years old. See Tr. 35.  He has a ninth grade education and past

23   work experience as a fast food worker. See Tr. 153, 158, 166, 671.  On April 28, 2003, plaintiff

24   filed an application for SSI benefits, alleging disability as of January 1, 1999, due to depression,

25   aphasia, being bi-polar, learning disabilities, high blood pressure, and fetal alcohol syndrome.

26   See Tr. 18, 36, 87, 94.  His application was denied both on initial review and on reconsideration.

REPORT AND RECOMMENDATION - 1

See Tr. 36-38, 43.  A hearing was held before an administrative law judge ("ALJ") on August 8, 2006, at which plaintiff's counsel appeared, but plaintiff himself did not, and at which a medical expert appeared and testified. Tr. 643-659.

On August 23, 2006, the ALJ issued a decision, in which she dismissed plaintiff's request for a hearing due to his failure to establish good cause for not appearing at the above hearing, and found that because of this failure the prior administrative denial of his application remained in effect. See Tr. 371-72.  That decision, however, was vacated by the Appeals Council, which remanded the matter to the same ALJ to consider additional information as to whether there was a good reason for plaintiff not appearing, and if so, provide him with another opportunity for a hearing. See Tr. 374-75.  On April 22, 2009, a second hearing was held before the same ALJ, at which plaintiff, again represented by counsel, this time appeared and testified, as did a vocational expert. See Tr. 660-89.

On June 23, 2009, the ALJ issued a decision, in which she determined plaintiff to be not disabled, finding specifically in relevant part that:

(1)   at step one of the sequential disability evaluation process,[1] plaintiff had not engaged in substantial gainful activity since the date of his application; and

(2)   at step two, there were no medical signs or laboratory findings in the record to substantiate the existence of a medically determinable impairment.

See Tr. 18-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 3, 2009, making the ALJ's decision defendant's final decision. See Tr. 4; 20 C.F.R. § 416.1481.

On November 27, 2009, plaintiff filed a complaint in this Court seeking review of the

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

1  ALJ's decision. (ECF #1-#3).  The administrative record was filed with the Court on February

2  22, 2010. (ECF #10).  Plaintiff argues the ALJ's decision should be reversed and remanded to

3  defendant for an award of benefits or, in the alternative, for further administrative proceedings,

4  because the ALJ erred in finding he had no severe mental impairments.  The undersigned agrees

5  the ALJ erred in finding him to be not disabled at step two, but, for the reasons set forth below,

6  recommends that while the ALJ's decision should be reversed, this matter should be remanded to

7  defendant for further administrative proceedings.

8

9                                            DISCUSSION

10        The Court must uphold defendant's determination that plaintiff is not disabled if the

11  proper legal standards are applied and there is substantial evidence in the record as a whole to

12  support the decision.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial

13  evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

14  conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d

15  1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  See

16  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

17  Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

18  interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

19  579 (9th Cir. 1984).

20

21  I.        The ALJ's Step Two Determination

22        At step two of the sequential disability evaluation process, the ALJ must determine if an

23  impairment is "severe." 20 C.F.R. § 416.920.  An impairment is "not severe" if it does not

24  "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

25  C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181

26

REPORT AND RECOMMENDATION - 3

*1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); See also SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect her[his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found in relevant part as follows:

The claimant reported experiencing depression and anxiety and described symptoms such as feeling sad and lonely, self critical, poor appetite, feelings of worthlessness, always feeling tired, passive thoughts of suicide, getting agitated and jittery, high strung, racing thoughts , and feeling nervous most of the time (Ex. B19F/204).  However, objective findings in the record do not support the validity of the claimant's allegations, as psychological examinations produced contradictory results which indicate that the claimant provided poor effort or attempted to make himself appear more disabled that [sic] he is.  Accordingly, the claimant was diagnosed as malingering (Ex. B6F; B19F/218, 219-220, 228).

In October of 2003, the claimant underwent a psychological evaluation with John T. Lloyd, Ph.D.  In preparation of the evaluation, Dr. Lloyd reviewed previous neuropsychological testing that was conducted in 1996 and 1993 (Ex. B6F/1).  During the examination, Dr. Lloyd indicated that he became suspicious of malingering when the claimant was asked to undertake a task and he would wrinkle his face and lips up in a much exaggerated manner as though he were trying to remember something that was beyond his ability.  Dr. Lloyd noted that this grimace was done to the point of bizarreness and was an obvious effort on the claimant's part to show the examiner that he was really trying to think (Ex. ZB6F/3).  The claimant also reported memory problems associated with learning disorder.  On mental status testing, the claimant was able to recall three words immediately, and after five minutes of intervening tasks, he could not give any of the three words.  Instead, the

REPORT AND RECOMMENDATION - 4

claimant gave three completely unrelated words which gave Dr. Lloyd the impression of disbelief in terms of honest effort (Ex. B6F/3).

Dr. Lloyd also noted discrepancies on intelligence testing, which contradicted previous testing. During the evaluation with Dr. Lloyd, the claimant displayed significant difficulties with working memory, which was contrary to the examination in 1996 when verbal functions were noted to be a significant weakness. Furthermore, the claimant [sic] scores were significantly lower than they had been in 1996 and 1993. The change in scores is unlikely to happen without something causing profound impact upon the individual in the intervening years, and given Dr. Lloyd's review of the claimant's medical history, there was no such event. There was no way to account for a 27 point drop in overall IQ with a 29 point decrease in performance ability and a 22 point decrease in verbal ability (Ex. B6F/5).

Based on the claimant's performance during the evaluation and review of prior evaluations, Dr. Lloyd concluded that the claimant was likely malingering. His history was not consistent with that given in 1996 and he did not give adequate effort in testing. In fact, the claimant reversed the pattern of scores noted in 1996 (Ex. B6F/6). Dr. Lloyd also noted that according to the Diagnostic Statistical Manual, malingering should be suspected if any of the combination of the following is noted: (1) medical-legal context, (2) discrepancy between claimed disability and objective findings, (3) lack of cooperation, and (4) presence of anti-social personality disorder. Dr. Lloyd noted consistencies with all four areas. The claimant's evaluation arose within a context for the purpose of applying for Social Security benefits, objective findings by Dr. Lloyd contradict prior testing which had been completed for an entirely different purpose in assessing the claimant's functioning in school, the claimant displayed unusual behaviors while trying to display to his examiner that he was trying to think, and the claimant's history of incarceration since adolescence suggested the presence of anti-social personality disorder (Ex. B6F).

In addition, David. A. Johnston, M.D., who treated the claimant periodically between July 2003 and April of 2004, also identified the claimant's malingering. In December of 2003, Dr. Johnston noted that the claimant had trouble providing responses to questions about symptoms, because he could not think of the answers. However, he had no trouble providing detailed information regarding recent incarcerations. In addition, during that particularly [sic] examination, the claimant gave an entirely different lifetime mental health history than he had in July of 2003. Dr. Johnston noted that the more recent history was obviously geared to obtaining anxiolytic and sedative medication (Ex. B19F/219-220, 218).

Moreover, the claimant's testimony at the hearing further supported the diagnosis of malingering and undermined his credibility. He testified to

REPORT AND RECOMMENDATION - 5

having difficulties with memory; however he was able to articulately testify to past work at McDonalds in 1996 through 1998 and in 2000, many years ago. He was capable of recalling details about hamburger cooking and trays.  It should also be noted that the claimant testified that he did not do work release while incarcerated, but the record shows that he did (Ex. B19F/16).

In light of the claimant's diagnoses of malingering and his presentation at the hearing, the undersigned finds that additional diagnoses found in the record, such as cognitive disorder, depression, and anxiety, are unreliable and unsupported by truly objective medical findings (See Ex. B2F; B16F; B19F). It should also be noted that the claimant's malingering diagnosis undermines statements in the record regard [sic] functional abilities and limitations.

Accordingly, no there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

Tr. 21-22.

In challenging the ALJ's findings here, plaintiff first points to the rule-out diagnosis, as opposed to an actual diagnosis, of malingering Dr. Lloyd gave him in October 2003, and to Dr. Lloyd's statement at the time that there was "no absolute proof that" plaintiff was "consciously malingering in this examination." Tr. 260.  Plaintiff further notes Dr. Lloyd also diagnosed him with another mental impairment, an anti-social personality disorder. See id.  In addition, plaintiff argues the ALJ failed to reference the opinion evidence provided by the medical expert at the first hearing, Dr. Jay M. Toews, who testified that the "indices" or "criteria" for malingering were "somewhat weak" in regard to plaintiff, and that the "particular test . . . that is sensitive to malingering," the results of which Dr. Lloyd did not provide, would give confirmation for the malingering diagnosis. Tr. 653-57 (noting further, though, that such results are "typically not reported," as "not all psychologists know [those results] sensitive to malingering" and "typically will not report [them] unless they are directed to do so").

In regard to Dr. Johnston, plaintiff again notes that he diagnosed him with other mental impairments, including an anti-social personality disorder, a histrionic personality disorder and a

rule-out borderline personality disorder in his December 18, 2003 and April 16, 2004 evaluation reports. See Tr. 609-10, 617.  Plaintiff argues as well that the ALJ erred in failing to mention the November 2003 evaluation report of Mark Eisenstadt, M.D., who did not diagnose plaintiff with malingering, but did provide diagnoses of dysthymia, rule-out other mood disorders and a mixed personality disorder with anti-social and possible paranoid features. See Tr. 273.  Lastly, plaintiff argues the ALJ erred in not addressing the opinion of Thomas Clifford, Ph.D., a non-examining, consulting physician, who, based on his review of the record, affirmed the findings of another reviewer in December 2003, that plaintiff had several moderate mental functional limitations due in part to an anti-social  personality disorder. See Tr. 312-28.

Defendant argues that the record contains abundant evidence of both the diagnosis and existence of malingering, and that plaintiff's identification of other mental impairments does not invalidate that evidence.  Defendant, however, misses the point.  First, while the ALJ found "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment," clearly this is not the case, given that all of the above medical sources diagnosed him with such based on their review of the medical evidence in the record and/or on in-person examinations of plaintiff. See Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical and laboratory data may consist of diagnoses and observations of professionals trained in psychopathology); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence).

Second, defendant's argument – and the ALJ's own determination – that the evidence of malingering in the record is sufficient to make those diagnosis "unreliable and unsupported by truly medical findings," would have more force if none of the above medical sources in fact had

REPORT AND RECOMMENDATION - 7

not provided any such "objective findings" – which, as just discussed, they did – and if none of those sources had indicated that at least some of plaintiff's symptoms and functional limitations were due to these other impairments.  But, again, such is not the case here.  For example, in his October 2003 report, Dr. Lloyd found plaintiff's anti-social personality disorder to be supported by his "long history of failure to comply with social norms," his "deceitfulness", his "reckless[] disregard [for] the safety of others," and his consistent irresponsibility. Tr. 260.  Dr. Lloyd also assessed plaintiff with a global assessment of functioning ("GAF") score of 65, which indicated "mild to moderate symptoms interfering with his ability to function socially and occupationally," and which was not specifically linked to the rule-out malingering diagnosis.[2] Id.

Dr. Llyod further opined that plaintiff's "very poor and overtly quite obvious" attempt to manipulate his environment, which again was not specifically linked to the rule-out diagnosis of malingering, tended to indicate he would have additional "difficulties maintaining employment or social relationships because of his inability to be subtle in his manipulative efforts." Id.  Dr. Lloyd then went on to conclude his evaluation report as follows:

> **Prognosis:** These patterns are very difficult to change and tend to be life-long in nature.  Mr. West has been in and out of incarceration for many years and it is unlikely that this pattern will change without significant intervention.  This is not foreseen and I see no plans for intervention to occur.  Therefore, his prognosis is poor and he is likely to repeat the same offensive behavior that he has demonstrated in the past.
>
> **Capability to Manage Funds:** Mr. West showed very poor ability to do subtractions on the Mental Status Examination.  Also, his intellectual IQ, as measured in this examination, left him as mildly mentally retarded.  Given the scores, it is unlikely that he could manage his own funds.  Given his anti-social behavior in the past, it is unlikely that he could manage his own funds.

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [an individual's] overall level of functioning,'" and is "relevant evidence" of the individual's ability to function mentally. Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007); England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

REPORT AND RECOMMENDATION - 8

**Medical Source Statement:** This individual presented himself in a very friendly manner.  He maintained communication in a very friendly manner.  He seemed to present himself as an individual of reason and normal intellect.  However, upon testing, he failed through all the patterns, including the ability to reason, understand, and remember.  This directly contradicts the testing of seven years ago in which it was indicated that he had verbal impairments, but was very good with non-verbal abilities.  This testing did not show an ability for sustained concentration and attention, other than his facial expressions.  This examiner believes that the facial expressions were to make the examiner feel that he was trying to concentrate.  His social interaction skills are probably not at the level that he thinks they are.  He probably thinks that he is much more competent in social interaction than he is, and because of this, he has limited friends.  His ability to adapt to his environment, I believe, is quite poor, and he tends to use non-socially acceptable means of adapting which then results in him returning to incarceration.

Tr. 261.  Thus, while Dr. Lloyd's evaluation report certainly contains evidence of malingering or malingering-type behavior on plaintiff's part, it also is clear from the report that Dr. Lloyd found plaintiff to have other mental functional symptoms and limitations as well.

On the basis of a physical examination he performed on December 8, 2003, Dr. Johnston diagnosed plaintiff with malingering, setting forth in detail the behaviors engaged in by plaintiff that gave rise to that diagnosis. See Tr. 618-19.  On December 18, 2003, Dr. Johnston diagnosed plaintiff with mental impairments in addition to malingering, but pointed to no mental functional limitations stemming from those other diagnoses. See Tr. 617.  Indeed, he assessed plaintiff with a GAF score of 80. See Werle v. Astrue, 633 F.Supp.2d 857, 882 n.15 (D.Ariz 2009) ("With a GAF Score between 71-80, '[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors . . . [resulting in] no more than slight impairment in social, occupational, or school functioning . . .") (quoting Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed.) ("DSM-IV")).

Dr. Johnston suspected malingering as well on April 2, 2004. See Tr. 616.  On April 16, 2004, however, he assessed plaintiff with a GAF score of 60, which is indicative of "'[m]oderate

symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" See Tr. 610; Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV at 34).  At the time, in addition to noting plaintiff's history of malingering, Dr. Johnston also diagnosed him with a number of other mental impairments, such as an impulse-control disorder, an anti-social personality disorder, a histrionic personality disorder, a history of major depressive disorder, and a rule-out generalized anxiety disorder and rule out borderline personality disorder. See Tr. 609-10.  Dr. Johnston did not specify which of plaintiff's diagnosed impairments contributed to or resulted in the moderate mental functional limitations reflected in the GAF score he assessed.

Accordingly, although Dr. Johnston clearly was familiar with plaintiff's malingering, his most recent progress note indicates he believed plaintiff was suffering from at least some mental functional limitations not specifically linked to that behavior.  In addition, Dr. Eisenstadt gave no indication in early November 2003, that he suspected malingering on plaintiff's part, but instead gave diagnoses of dysthymia, a mixed personality disorder with antisocial and possibly paranoid features and rule out other mood disorders. See Tr. 273.  Dr. Eisenstadt, furthermore, assessed plaintiff with a GAF score of 50. See England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in general ability to perform basic tasks of daily life); Pisciotta, 500 F.3d at 1076 n.1 (10th Cir. 2007) (GAF score of 50 indicates serious impairment in social, occupational, or school functioning, such as inability to keep job).

Finally, Dr. Clifford, who diagnosed plaintiff only with an anti-social personality disorder and cannabis abuse, found he had a moderate limitation in several social and cognitive functional areas. See Tr. 312-14, 323-24.  Dr. Clifford also opined that plaintiff would be further restricted

REPORT AND RECOMMENDATION - 10

in his ability to work as follows:

- he would not work well with public contact;
- he would work best with hands-on tasks that did not require much interaction with co-workers or supervisors;
- he was likely to become upset/frustrated;
- work place changes were likely to upset him; and
- he would encounter difficulty with goal setting.

See Tr. 314-15.  As such, the record contains ample medical opinion evidence that plaintiff has at least some mental functional limitations due to one or more severe mental impairments, even though there also is clear evidence of malingering on his part.  Rather, it appears, as argued by plaintiff, that the ALJ improperly acted as her own medical expert here in rejecting the other diagnoses in the record as not being medically determinable. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).   As such, the ALJ's step two determination is not free of error.[3]

---

[3] As noted above, plaintiff argues the ALJ erred as well in finding the testimony he provided at the hearing regarding his work history "further supported the diagnosis of malingering and undermined his credibility." Tr. 22.  But as just discussed, the ALJ's step two determination is improper based on her errors in evaluating the medical evidence in the record.  As such, the issue of plaintiff's credibility at the hearing need not be resolved in order to come to proper resolution of this matter.  Indeed, although the ALJ must take into account pain and other symptoms at step two (see 20 C.F.R. § 404.1529), the severity determination is to be made solely on the basis of the objective medical evidence in the record (see SSR 85-28, 1985 WL 568556 *4 ("At [step two], . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

Defendant argues that to the extent the medical opinion source evidence in the record was based primarily on plaintiff's subjective complaints, the ALJ did not err in rejecting it due to plaintiff's malingering and the "numerous other reasons to discount" his credibility. (ECF #14, pp. 12-13); see Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted).  As discussed above, however, both Dr. Lloyd and Dr. Johnston were well aware of plaintiff's malingering behavior, but still found at least some evidence of mental functional limitations not specifically linked

REPORT AND RECOMMENDATION - 11

II.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues remain with respect to whether plaintiff has a severe mental impairment at step

---

to that behavior.  Defendant has not shown why the ALJ's own lay opinion here should be substituted for those of two licensed medical professionals, each of whom personally evaluated plaintiff on more than one occasion and thus were competent to assess the credibility of his presentation at the time.  In addition, Dr. Clifford based his functional assessment on his review of the record, which included at least some of the medical documentation provided by Drs. Lloyd and Johnston in which malingering was indicated.  Lastly, although Dr. Eisenstadt did not perform his own mental status examination of plaintiff, and therefore did appear to rely to a fairly large extent on plaintiff's own self-reporting, the ALJ, also as discussed above, completely failed to address this evaluation report – as well as, it should be noted, the assessment provided by Dr. Clifford – and, as such, she did not offer plaintiff's lack of credibility as a specific basis for rejecting the findings contained therein. See Tr. 22 (ALJ merely stating in general that malingering diagnosis undermined statements in record concerning functional abilities and limitations); see also Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (finding insufficient ALJ's rejection of physician's opinion on basis of mere statement, without more, that medical support for it in record is lacking).  Accordingly, the undersigned finds defendant's argument to be without merit here.

REPORT AND RECOMMENDATION - 12

two of the sequential disability evaluation process, this matter should be remanded to defendant for further consideration of the evidence in the record at that step.  If, on remand, it is determined that plaintiff has one or more severe impairments, or a combination thereof, defendant should go on to the remaining steps of the sequential disability evaluation process to determine if plaintiff is disabled at any of those steps and thus entitled to SSI benefits.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to

REPORT AND RECOMMENDATION - 13

1   file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in

2   a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

3   Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this

4   matter for consideration on **December 24, 2010**, as noted in the caption.

5          DATED this 6th day of December, 2010.

6

7

8

9                                                     Karen L. Strombom
                                                      United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 14